(Slip Opinion)

# Application of 10 U.S.C. § 191 and Section 8044 of Pub. L. No. 118-47 to the Defense Innovation Unit and Strategic Capabilities Office

The Secretary of War may designate an existing Department of War organization as a defense field activity pursuant to 10 U.S.C. § 191 so long as the organization's governing statute is not inconsistent with the requirements of a defense field activity. *See* 10 U.S.C. §§ 191, 192.

The term "field operating agency" in defense appropriations acts means a specialized subdivision of the Office of the Secretary of War or of an Armed Service that carries out noncombat activities under the Office of the Secretary of War or the relevant Armed Service's headquarters. The term does not include a major command or its subordinate commands, nor does it include Combat Support Agencies. *See* Pub. L. No. 118-47, § 8044(a)(1), 138 Stat. 460, 492 (2024).

The procedural requirements of section 8044 of Public Law 118-47 are not triggered where the action of the Secretary of War establishes a defense field activity yet does not "bring about or into existence" a new field operating agency. *See* Pub. L. No. 118-47, § 8044(a)(1), (b), 138 Stat. 460, 492–93 (2024).

April 22, 2026

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF WAR

The Department of War ("Department") has recognized that many non-combat support functions are best performed in a coordinated fashion— either within a single Armed Service or across the Department. These noncombat support organizations go by many names, including "Department of [War] Field Activities" ("Field Activities"), but their common characteristic is that each performs a specialized noncombat task that is beyond the scope of any specific command or Armed Service.[1] As part of an effort to reduce personnel in these noncombat support organizations,[2] Congress mandates that the Secretary of War ("Secretary") comply with certain procedural requirements before his Department may use "the funds made available by" defense appropriations acts "to establish a field oper-

---

[1] *See* Gov't Accountability Off., GAO/NSIAD-98-25, *Defense Headquarters: Total Personnel and Costs Are Significantly Higher than Reported to Congress* at 2 (1997), https://perma.cc/DR2V-NQKD ("GAO, *Defense Headquarters*").

[2] *Id.* at 2–3.

ating agency." *See* Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, div. A, § 8044(a)(1), 138 Stat. 460, 492 ("2024 Appropriations" or "section 8044"). Congress uses the term "Field Operating Agency" to describe the varying noncombat support organizations within both the Office of the Secretary of War ("OSW") and the Armed Services.[3]

In January 2026, the Secretary issued a memorandum detailing his plans to reform the Department's development and procurement of cutting-edge materiel. *See* Memorandum for Senior Pentagon Leadership from Pete Hegseth, Secretary, Department of War, *Re: Transforming the Defense Innovation Ecosystem to Accelerate Warfighting Advantage* (Jan. 9, 2026) ("January Memo"). The Secretary there proposed to designate the Defense Innovation Unit ("DIU") and the Strategic Capabilities Office ("SCO") as Field Activities pursuant to 10 U.S.C. § 191 in order to increase the Department's efficiency and effectiveness in the development, procurement, and deployment of advanced technologies. *Id.* at 2–3.

You asked us whether the Secretary's proposed designation would trigger the procedural requirements associated with establishing a Field Operating Agency. We advised that the Secretary may designate the DIU and SCO as Field Activities pursuant to section 191 because their charters and governing statutes meet the statutory requirements of a Field Activity. And, because both organizations have also long existed as Field Operating Agencies, we further concluded that such a designation does not trigger the procedural requirements for creating a Field Operating Agency. We now memorialize the basis for that advice.

## I.

### A.

There are primarily three types of organizations within the Department that "perform consolidated supply and service functions"—that is, "business functions designed to support the warfighter, such as managing finances, information systems, contracts, and weapon systems"—"on a department-wide basis": Defense Agencies, Field Activities, and Combat

---

[3] *See* Part III.A, *infra*; Memorandum for Secretaries of the Military Departments from D.O. Cooke, Director, Office of the Secretary of Defense, *Re: Implementation of Section 8061 of the FY 1998 DoD Appropriation Act* at 2 (Jan. 13, 1998) ("Cooke Memo").

Support Agencies. Gov't Accountability Off., GAO-18-592, *Defense Management: DOD Needs to Address Inefficiencies and Implement Reform Across Its Defense Agencies and DOD Field Activities* at 1 (2018), https://perma.cc/B55B-ZRLN ("GAO, *Defense Management*"). Relevant here, the Secretary may establish Field Activities, which are "separate from the military departments," to "provide a common supply or service across more than one" Armed Service. *Id.* at 4.[4] The Department maintained eight Field Activities at the time of your inquiry. *Id.* at 4–5; *see also id.* at 6 (Figure 1).

The Armed Services also "have numerous subordinate noncombat organizations." GAO, *Defense Headquarters*, *supra* note 1, at 2. These organizations go by many names. *Id.* But like Field Activities, these organizations "perform a wide variety of functions, from direct staff support to their parent headquarters to operating military academies." *Id.* These organizations differ from Defense Agencies, Field Activities, and Combat Support Agencies primarily in that they provide a common supply or service function across a particular Armed Service, as opposed to providing such a supply or service on a Department-wide basis. *Compare id. with* 10 U.S.C. §§ 191, 193.

In 1972, "citing its concern that the size of [the Department's] headquarters staff was not accurately reported," Congress imposed a number of reporting requirements regarding "headquarters activities." Gov't Accountability Off., GAO/FPCD-83-29, *Staffing Data for Department of Defense Top Management Headquarters Organizations* at 3 (1983), https://perma.cc/E9UA-6567. Nonetheless, for years thereafter, "[t]he organizational structure of each military department [retained] hundreds of components," which were "difficult, if not impossible, to standardize." Gov't Accountability Off., GAO/FPCD-76-35A, *Highlights of a Report on Staffing and Organization of Top-Management Headquarters in the Department of Defense* at 21 (1976), https://perma.cc/9WA5-ZRVV.

---

[4] *See also* 10 U.S.C. § 101(a)(11) (defining "Defense Agency"); *id.* § 101(a)(12) (defining "Department of [War] Field Activity"); *id.* § 192(a)(1) (requiring "the overall supervision of each Defense Agency and . . . Field Activity" be assigned "to a civilian officer within the [OSW] listed in" 10 U.S.C. § 131(b) or "the Chairman of the Joint Chiefs of Staff"). Combat Support Agencies are likewise separate from the military departments, *see* GAO, *Defense Management* at 4, but have different reporting structures not relevant here. *Id.* at 5; *see also* 10 U.S.C. § 193.

Moreover, rather than reduce overall personnel, the reporting requirements incentivized "transfers of functions and personnel [out of headquarters] to other organizations" within the Department. GAO, *Defense Headquarters*, *supra* note 1, at 2. Congress responded, in part, by forbidding the Department from using any appropriated funds "to establish additional field operating agencies"—a term that includes all noncombat headquarters organizations. Department of Defense Appropriations Act, 1995, Pub. L. No. 103-335, § 8108, 108 Stat. 2599, 2646 (1994) ("1995 Appropriations"); *see also* H.R. Rep. No. 105-206, at 248 (1997).

### B.

The DIU and SCO are, and always have been, two such noncombat headquarters organizations. The Secretary created the DIU in 2015 "to further [the Department's] outreach to innovative technology companies in the commercial sector." Gov't Accountability Off., GAO-25-106856, *Defense Innovation Unit: Actions Needed to Assess Progress and Further Enhance Collaboration* at 4 (2025), https://perma.cc/5Z69-ER2G. In 2024, Congress concurred in that decision by "establish[ing] . . . a Defense Innovation Unit" with statutorily assigned duties whose Director "report[s] directly to" the Secretary. National Defense Authorization Act for Fiscal Year 2024, Pub. L. No. 118-31, § 913(a)(1), 137 Stat. 136, 365 (2023) ("2024 NDAA") (codified as amended at 18 U.S.C. § 4127). At the time of your inquiry, the Under Secretary of War for Research and Engineering ("Under Secretary") was assigned "organization and management responsibilities" for the DIU.[5]

The Secretary chartered the SCO in 2015 to "repurpose[] existing . . . technologies for new missions and for creative use across domains." Lisa A. Aronsson, Cong. Rsch. Serv., IF10790, *What Next for the Third Offset Strategy?* at 1 (Dec. 13, 2017), https://perma.cc/E36B-KX53; *see also* Off. of the Sec'y of Def., OSD071695-15, *Charter for the Strategic Capabilities Office* (June 3, 2015), *incorporated by*, *Director, Strategic Capabilities Office (SCO)*, Dep't of Def. Directive 5105.86

---

[5] Memorandum for Senior Pentagon Leadership from Lloyd J. Austin, Secretary, Department of Defense, *Re: Realignment and Management of the Defense Innovation Unit* at 1 (Apr. 4, 2023); *see also* Dep't of Def., *Office of Secretary of Defense Organizational Structure* (Jan. 17, 2025), https://perma.cc/G7XN-C6ZW ("*OSW Organizational Structure*").

(Nov. 14, 2016) ("SCO Directive"). In 2019, Congress required the SCO Director to "report directly to the Deputy Secretary of [War]" ("the Deputy") and required the Deputy to "exercis[e] authority and direction over the" SCO. National Defense Authorization Act for Fiscal Year 2020, Pub. L. No. 116-92, § 233(a)(2)–(3), 133 Stat. 1198, 1277–78 (2019) (codified at 10 U.S.C. § 132 note) ("2020 Appropriations"). At the time of your inquiry, the SCO was "[u]nder the authority, direction, and control of the Secretary and the Deputy." SCO Directive § 3.1.

Although the DIU and SCO have always existed separately from the Armed Services and have provided a common service across the Department, their founding documents did not designate them as Field Activities. *See Defense Innovation Unit (DIU)*, Dep't of Def. Directive 5105.85 (Nov. 23, 2018) ("DIU Directive"); SCO Directive. This contrasts, for example, with the Defense Technology Security Administration, which was expressly "established as a . . . Field Activity." *Defense Technology Security Administration (DTSA)*, Dep't of Def. Directive 5105.72, § 4(a) (Apr. 26, 2016).

As the Under Secretary's office has explained, because the DIU and SCO were not formally designated as Defense Agencies or Field Activities, the DIU and SCO were funded through the OSW budget rather than through separate appropriations. *See* E-mail for Earl Matthews, General Counsel, Office of the Secretary of War, from Joseph Whited, Chief of Staff, Under Secretary of War for Research & Engineering, *Re: Query* (Feb. 10, 2026, 5:24 PM) ("Whited E-mail"). The Washington Headquarters Service also managed DIU and SCO personnel. *Id.* Their directors consequently did not have the same level of control over their budgets and personnel as the directors of Field Activities. *Id.*

On January 9, 2026, the Secretary announced the reorganization of OSW organizations responsible for developing and procuring cutting-edge military technologies. In particular, the Under Secretary now serves as the Department's Chief Technology Officer ("CTO") and will chair the CTO Action Group. January Memo at 1–2. That group oversees the DIU, the SCO, and several other technology-oriented organizations. *Id.* at 3.

As part of this reorganization, the Secretary designated the DIU and SCO as Field Activities pursuant to 10 U.S.C. § 191. *Id.* at 2. The Secretary assigned the Under Secretary as the DIU and SCO's supervisor, *id.* attach. 1 at 1 (citing 10 U.S.C. § 192), subject to the DIU's and SCO's statutory "authorities and relationships," *id.* (citing 10 U.S.C. §§ 132 note,

4127). The DIU and SCO's designation as Field Activities did not change the organizations' internal structure, alter their missions, increase their personnel, or expand their budgets. *See* DIU Directive; SCO Directive; 10 U.S.C. § 194(a)–(b); *see also* Whited E-mail. Their official designation as Field Activities, however, provided their Directors with increased control over their budgets and personnel and promoted Department-wide efficiencies and effectiveness in the development and procurement of advanced technologies. *See* Whited E-mail; E-mail for Lanora Pettit, Deputy Assistant Attorney General, Office of Legal Counsel, from Earl Matthews, General Counsel, Office of the Secretary of War, *Re: Inquiry Regarding Section 8044 of Pub. Law 118-47* attach. at 4 (Apr. 13, 2026, 8:58 AM) ("April General Counsel E-mail").

## II.

You asked our Office whether the designation of the DIU and SCO as Field Activities would "establish" a Field Operating Agency, thereby triggering the procedural requirements of section 8044. Because the DIU and SCO already existed, however, your question raised a logically antecedent question: May the Secretary designate as a Field Activity an existing organization whose structure or mission has been, at least in part, dictated by Congress? We concluded that he can—so long as the organization's governing statute meets (or at least permits the Secretary to organize the activity in a way that meets) the statutory requirements for a Field Activity.

### A.

The concept of a Field Activity traces its origin to the Goldwater-Nichols Department of Defense Reorganization Act of 1986 ("Goldwater-Nichols Act"), Pub. L. No. 99-433, 100 Stat. 992, which sought to address a "lack of effective departmental coordination of acquisition" that persisted notwithstanding a historic reorganization of the Armed Forces following the end of World War II. Senate Comm. on Armed Services, *Defense Organization: The Need for Change*, S. Doc. No. 99-86 (1985); *see also* Peter M. Murphy & William M. Koenig, *Whither Goldwater-Nichols?*, 43 Naval L. Rev. 183, 188–89 (1996); Jason B. Barlow, *Interservice Rivalry in the Pacific*, Joint Force Q., May 1994, at 76–81. To address systemic inefficiencies, Congress permitted the Secretary of War to "provide for the performance of a supply or service activity that is common to

more than one military department by a single agency of the Department" whenever he determines "such action would be more effective, economical, or efficient." Goldwater-Nichols Act § 301(a)(2), 100 Stat. at 1019 (codified at 10 U.S.C. § 191(a)).

Such an agency must satisfy four statutory requirements. *First*, it must be a "single agency" within the Department. 10 U.S.C. § 191(a)*. Second*, it must perform a service or activity common to multiple military departments. *Id. Third*, it must be supervised by one of the OSW officials specified by statute.[6] *Id.* § 192(a)(1)(A). *Fourth*, the Secretary must designate the organization as either a Defense Agency or Field Activity. *Id.* § 191(b).

Apart from these requirements, however, the law simply states that the Secretary has broad discretion to "provide for" the common "supply or service activity." *Id.* § 191(a). Because we do not typically read into a statute any limitations that Congress chose not to include, *see Liquidation of Reconstruction Finance Corporation—Disclosure of Information*, 41 Op. Att'y Gen. 166, 169–70 (1953); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 93 (2012) ("Scalia & Garner"), that discretion includes the ability to designate an already extant organization as a Field Activity, *see, e.g.*, *FCC v. Consumers' Rsch.*, 145 S. Ct. 2482, 2496–97 (2025).

One counterargument might arise from the requirement that the Secretary designate an organization "established under" section 191(a) as a Field Activity. 10 U.S.C. § 191(b); *see also id.* § 101(a)(12). Specifically, some might argue that section 191(b)'s use of the word "established" requires the Secretary to erect a *new* agency in order to create a Field Activity, thus precluding the Secretary from designating an *existing* agency as a Field Activity. *See The American Heritage College Dictionary* 478 (4th ed. 2002) (defining "establish") ("*American Heritage*").

We are unpersuaded. We presume Congress intends terms to carry their ordinary meanings unless it specifies otherwise. *See, e.g.*, *Williams v.*

---

[6] Assuming he does not assign "responsibility for the overall supervision of each . . . Field Activity designated under section 191(b)" to "the Chairman of the Joint Chiefs of Staff," the Secretary must give such authority to "a civilian officer within the Office of the Secretary of [War] listed in section 131(b)." 10 U.S.C. § 192(a)(1). Section 131(b) lists the officials of which the OSW "is composed." *Id.* § 131(b). We therefore refer to these civilian officials simply as "OSW officials." Perhaps counterintuitively, section 192 precludes the Secretary himself from serving as the supervising officer because the Secretary is not an officer listed in section 131(b).

*Taylor*, 529 U.S. 420, 431 (2000); *Salinas v. United States*, 522 U.S. 52, 63 (1997); Scalia & Garner at 69. Read in the light of the Secretary's broad powers under section 191(a), the ordinary meaning of "established" is "[h]aving been brought about or into existence." *Black's Law Dictionary* 686 (12th ed. 2024) ("*Black's Twelfth*"); *see also American Heritage* at 478. The Secretary can "br[ing] about or into existence" a Field Activity *either* by erecting a new organization *or* by tapping an existing organization within the Department that is not already designated as a Field Activity. In either scenario, a Field Activity exists where it did not exist before.

### B.

Although section 191 generally permits the Secretary to designate an existing organization within the Department as a Field Activity, the Secretary must, of course, ensure that the organization meets the statutory requirements for such an activity. Ordinarily, "[w]e construe federal laws harmoniously to effectuate Congress's enactments to the extent possible, particularly when statutes address the same subject." *Harmonizing the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 and Section 214 of the Housing and Community Development Act of 1980*, 50 Op. O.L.C. __, at *7 (Feb. 18, 2026) ("PRWORA Opinion"); *see also Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018). But where a specific organization's governing statute is inconsistent with a requirement of a Field Activity, "the specific provision prevails," Scalia & Garner at 183; *see also Kemp v. United States*, 142 S. Ct. 1856, 1863–64 (2022). Such an organization accordingly cannot be designated as a Field Activity. *Cf. RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992)).

The Secretary would thus be barred from designating an organization as a Field Activity if the statutes governing the organization prevent the organization from (i) existing as a single agency within the Department; (ii) performing a service or activity common to multiple military departments; or (iii) being supervised by an OSW official.[7] But that is not the case here.

---

[7] Because the fourth requirement involves the designation itself, it imposes a separate requirement only in the limited instance where Congress statutorily establishes an organization as a Defense Agency. That agency would satisfy all three requirements of a Field

**1.**

When Congress ratified the Secretary's decision to establish the DIU, it required that the DIU Director directly report to and communicate with the Secretary. 10 U.S.C. § 4127(c)(2). It also detailed the DIU's responsibilities. *Id.* § 4127(d). That statute does not prevent the Secretary from designating the DIU as a Field Activity.

*First*, there is no question that Congress established the DIU as a single organization in the Department of War. *See id.* § 4127(a).

*Second*, the DIU's statutory responsibilities under 10 U.S.C. § 4127(d) *require* that it perform a "service activity . . . common to more than one military department." *Id.* § 191(a). For example, the DIU is charged with identifying and facilitating the development of commercial technologies, as well as accelerating the integration of those technologies into the military departments. *Id.* § 4127(d)(1)–(2). It also coordinates and advises on "efforts among elements of the Department . . . relating to the development, procurement, and fielding of nontraditional capabilities." *Id.* § 4127(d)(6); *see also id.* § 4127(d)(5), (7).

*Third*, although the DIU Director must "report directly to the Secretary without intervening authority" and "communicate views on matters" within the DIU's purview "directly to the Secretary," *id.* § 4127(c), the Secretary may still comply with section 192's requirement that a Field Activity be supervised by an OSW official, *id.* § 192(a)(1)(A). A subordinate reports to a superior, and a superior supervises a subordinate. *Compare New Oxford American Dictionary* 1481 (3rd ed. 2010) (defining "report"), *with id.* at 1747 (defining "supervise").[8] Consequently, section 4127(c)'s mandate that the DIU Director "report directly to the Secretary" requires that the Secretary directly supervise the DIU Director. *See* E-mail for Daniel Yi, Associate Deputy Attorney General, from Peter Kallis, Attorney-Adviser, Office of Legal Counsel, *Re: DOJ DoC: Lead-*

---

Activity, *see* 10 U.S.C. §§ 191(a)–(b), 192(a), but the Secretary could not designate it as a Field Activity without contravening Congress's statutory mandate that the organization be designated as a Defense Agency. We also note that the designation of an organization as a Field Activity should be properly documented to prevent a later dispute.

[8] *See also Merriam-Webster's Collegiate Dictionary* 1056 (11th ed. 2005) (defining "report"); *id.* at 1255 (defining "supervise").

*ership Review: No Due Date: JMD Amendments to 28 CFR 42.2 (EEO Regulations) (JMD 162)* (Oct. 10, 2024, 1:02 PM) ("*Kallis E-mail*").

But section 4127's mandate does not preclude the Secretary from designating an OSW official to exercise *concurrent* supervisory responsibility over the DIU. It is a bedrock principle of statutory construction that "[n]othing is to be added to what the text states or reasonably implies." Scalia & Garner at 93; *see also Delegation of Cabinet Members' Functions as Ex Officio Members of the Board of Directors of the Solar Energy and Energy Conservation Bank*, 6 Op. O.L.C. 257, 258–59 (1982). That presumption is particularly important here because, "[u]nless *specifically* prohibited by law," the Secretary may "perform any of his functions or duties, or exercise any of his powers through, or *with the aid of*, such persons in, or organizations of, the Department of [War] as he may designate." 10 U.S.C. § 113(d) (emphasis added). Section 4127 contains no such prohibition. And it would be inappropriate to apply the *expressio unius* canon to infer such a prohibition. *See* Scalia & Garner at 107. Congress established an express rule to which any such inference must yield: Unless the statutory provision in question "specifically" prohibits the assistance of other officials, the Secretary may employ such officials' assistance. 10 U.S.C. § 113(d); *see also Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013); PRWORA Opinion at *7. Section 4127 does not *specifically* prohibit the Secretary from designating an OSW official to aid in the day-to-day supervision of the DIU. *See* 10 U.S.C. § 113(d). And such a designation *would not* relieve the Secretary of his responsibility for supervising the DIU as required by section 4127. *Id.* The Secretary may therefore make the designation—provided that he maintains a direct reporting line between himself and the DIU Director.[9] *See id.*; 10 U.S.C. § 4127(c); *see also* Kallis E-mail.

---

[9] To be clear, we do not endorse the view that an agency may carry out any activity that Congress has not specifically prohibited. "An agency, after all, 'literally has no power to act'—including under its regulations—unless and until Congress authorizes it to do so by statute." *Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1649 (2022) (quoting *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986)). We conclude only that, where Congress has granted the Secretary the power to carry out his functions with the assistance of other officials, *see* 10 U.S.C. § 113(d), and where an organization's governing statute does not explicitly conflict with that power, the Secretary may provide for concurrent supervision of the organization.

Section 192(a)'s requirement that the Secretary assign to an OSW official "responsibility for the *overall* supervision" of a Field Activity, 10 U.S.C. § 192(a)(1) (emphasis added), does not "specifically prohibit[]" the exercise of concurrent authority, *id.* § 113(d). True, "overall" could be read as "comprehensive"—that is, to the exclusion of all other supervision. *See Webster's II New Riverside University Dictionary* 837 (1984) (defining "overall"); *see also American Heritage* at 990 (same). But such a reading would clash with section 113, which establishes the Secretary as the "head of the Department," 10 U.S.C. § 113(a)(1), grants him "authority, direction, and control over the Department," *id.* § 113(b), and holds him responsible for the actions of subordinates acting under his delegated authority, *id.* § 113(d). It is also untenable considering the broad statutory duties exercised by OSW officials and their status as subordinates to the Secretary. *See id.* §§ 132–149.

To the extent additional textual evidence is needed, compare section 4127 to instances where Congress *has* precluded concurrent supervision. For example, Congress has required that "[e]ach Inspector General shall report to and be under the general supervision of the head of [a] designated Federal entity, but *shall not report to, or be subject to supervision by*, any other officer or employee of such designated Federal entity." 5 U.S.C. § 415(d)(1) (emphasis added). It has similarly provided that certain administrative law "judges shall report to, and be under the general supervision of, the Secretary [of Health and Human Services], *but shall not report to, or be subject to supervision by*, another officer of th[at] Department." Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173, § 931(b)(2), 117 Stat. 2066, 2398 (codified at 42 U.S.C. § 1395ff note) (emphasis added). Section 4127(c) includes no such language, thus permitting the Secretary to designate an OSW official to exercise concurrent supervisory authority over the DIU.

The relationships established in the Secretary's January Memo conform to these requirements. Specifically, the Under Secretary (an OSW official) exercises supervision over the DIU pursuant to section 192(a), which comprises "administrative, resource, and integration matters—including strategy alignment, planning, programming, budgeting, and resource oversight." January Memo attach. 1 at 1. But that relationship "operates subject to the DIU Director's authorities and relationships provided by

law." *Id.* (citing 10 U.S.C. § 4127). As you have represented, this means that the Secretary exercises concurrent supervision over the DIU. *See* E-mail for Jacob Weaver, Counsel, Office of Legal Counsel, from Earl Matthews, General Counsel, Office of the Secretary of War (Mar. 2, 2026, 6:09 PM) ("March General Counsel E-mail"). The structure detailed in the January Memo thus satisfies both section 4127(c) and section 192(a).

**2.**

For similar reasons, the Secretary could designate the SCO as a Field Activity. As discussed above, Congress mandates that the SCO Director "report directly to the Deputy" and requires the Deputy to "exercise authority and direction over the" SCO. 2020 Appropriations § 233(a)(1)–(2), 133 Stat. at 1277. But it permits the Deputy to "delegate administrative, management, and other duties to the Director of the Defense Advanced Research Projects Agency, as needed, to effectively and efficiently execute the mission of the [SCO]." *Id.* § 233(a)(3), 133 Stat. at 1277–78. If anything, we find the question of whether the SCO can be designated a Field Activity to be easier than that of the DIU.

*First*, like the DIU, the Secretary established the SCO as a single organization within the Department. *See* SCO Directive at 1. And Congress agreed. 2020 Appropriations § 233(a)(1)–(2), 133 Stat. at 1277.

*Second*, the SCO's mission requires the SCO to collaborate with stakeholders across the Department to develop "game-changing concepts that can be fielded in the near-term." SCO Directive § 2(b). The SCO thus performs a "service activity that is common to more than one military department," in satisfaction of the second Field Activity requirement, 10 U.S.C. § 191(a).

*Third*, section 233 mandates that the Deputy "exercise authority and direction over the [SCO]" and that the SCO Director "report directly to the Deputy." 2020 Appropriations § 233(a)(1)–(2), 133 Stat. at 1277. Because the Deputy is an official listed in section 131(b), the Secretary could easily satisfy both section 192(a) and section 233 by assigning the Deputy as the SCO's supervisor. *See* 10 U.S.C. § 131(b). True, the January Memo instead assigns the Under Secretary as the section 192(a) supervisor. January Memo attach. 1 at 1. But like section 4127(c), sec-

tion 233 does not preclude the Secretary from designating an additional OSW official to exercise *concurrent* supervisory responsibility over the SCO. Kallis E-mail.

Section 233's provision affirmatively permitting the Deputy to "delegate administrative, management, and other duties to the Director of the Defense Advanced Research Projects Agency" ("DARPA"), 2020 Appropriations § 233(a)(3), 133 Stat. at 1277–78, does not foreclose this interpretation. Though that provision may prevent the *Deputy* from delegating *his* authority to anyone other than the DARPA director, *see* Scalia & Garner at 107, it is silent regarding the Secretary's ability to designate an *additional* officer to supervise the SCO *concurrently* with the Deputy, *compare id.* at 93, *with* Pub. L. No. 115-91, § 1610(c), 131 Stat. 1283, 1728 (2017) (codified at 10 U.S.C. § 2274 note) ("The authority under this subsection may not be delegated below the Deputy."). This interpretation best harmonizes section 233 with the Secretary's authority under section 113.[10]

Again, the January Memorandum satisfies Section 233's requirement that the Deputy exercise "authority and direction over the [SCO]." 2020 Appropriations § 233(a)(1), 133 Stat. at 1277. The Under Secretary (an OSW official) exercises supervision over the SCO pursuant to section 192(a). January Memo attach. 1 at 1–2. But that relationship "operates subject to the Deputy Secretary's authorities and relationships provided by law." *Id.* at 1 (citing 2020 Appropriations § 233, 133 Stat. at 1277). You confirmed that this means the Deputy exercises concurrent supervision over the SCO. *See* March General Counsel E-mail; *see also* January Memo attach. 1 at 1–2. The structure laid out in the January Memo thus conforms to the requirements of section 233 and the third Field Activity requirement, *see* 10 U.S.C. § 192(a)(1)(A).

As a result, the Secretary could, consistent with both the statutory requirements of a Field Activity and the organic statutes of the DIU and SCO, designate those entities as Field Activities.

---

[10] As noted, we attempt to construe statutes touching on the same subject in a harmonious manner. PRWORA Opinion at *7. "Even when statutory provisions are in tension, we will not read one statute as superseding the other unless the conflict is irreconcilable." *Id.* (citing *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 155 (1976)).

### III.

Having concluded that the Secretary could designate the DIU and SCO as Field Activities, we now turn to whether doing so established Field Operating Agencies, thereby triggering the procedural requirements of section 8044. *See* 2024 Appropriations § 8044(a)(1), (b), 138 Stat. at 492–93. That provision requires that the Secretary "determine[], and certif[y]" to the Department's appropriators, that his actions "will reduce the personnel requirements or the financial requirements of the [D]epartment." *Id.* § 8044(b), 138 Stat. at 493. Because the DIU and SCO were *already* Field Operating Agencies at the time of their designation as Field Activities, that designation did not establish any *new* Field Operating Agencies. Consequently, the Secretary's actions did not trigger section 8044's procedural requirements.

### A.

Neither the 2024 Appropriations nor any of its predecessors define what constitutes a Field Operating Agency.[11] Indeed, Congress has only

---

[11] *See* 1995 Appropriations § 8108, 108 Stat. at 2646; Pub. L. No. 104-61, § 8082, 109 Stat. 636, 667 (1995); Pub. L. No. 104-208, div. A, § 8067, 110 Stat. 3009, 3009-102 (1996); Pub. L. No. 105-56, § 8061, 111 Stat. 1203, 1233 (1997); Pub. L. No. 105-262, § 8055, 112 Stat. 2279, 2309 (1998); Pub. L. No. 106-79, § 8055, 113 Stat. 1212, 1242 (1999); Pub. L. No. 106-259, § 8052, 114 Stat. 656, 685 (2000); Pub. L. No. 107-117, div. A, § 8052, 115 Stat. 2230, 2258–59 (2002); Pub. L. No. 107-248, § 8048, 116 Stat. 1519, 1547 (2002); Pub. L. No. 108-87, § 8047, 117 Stat. 1054, 1082–83 (2003); Pub. L. No. 108-287, § 8047, 118 Stat. 951, 981 (2004); Pub. L. No. 109-148, div. A, § 8043, 119 Stat. 2680, 2708 (2005); Pub. L. No. 109-289, div. A, § 8038, 120 Stat. 1257, 1282 (2006); Pub. L. No. 110-116, div. A, § 8041, 121 Stat. 1295, 1324 (2007); Pub. L. No. 110-329, div. C, § 8040, 122 Stat. 3574, 3630 (2008); Pub. L. No. 111-118, div. A, § 8040, 123 Stat. 3409, 3437–38 (2009); Pub. L. No. 112-10, div. A, § 8038, 125 Stat. 38, 65–66 (2011); Pub. L. No. 112-74, div. C, § 8037, 125 Stat. 786, 813–14 (2011); Pub. L. No. 113-6, div. C, § 8037, 127 Stat. 198, 305 (2013); Pub. L. No. 113-76, div. C, § 8037, 128 Stat. 5, 112–13 (2014); Pub. L. No. 113-235, div. C, § 8038, 128 Stat. 2130, 2261 (2014); Pub. L. No. 114-113, div. C, § 8040, 129 Stat. 2242, 2360 (2015); Pub. L. No. 115-31, div. C, § 8041, 131 Stat. 135, 256 (2017); Pub. L. No. 115-141, div. C, § 8039, 132 Stat. 348, 472–73 (2018); Pub. L. No. 115-245, div. A, § 8039, 132 Stat. 2981, 3009 (2018); Pub. L. No. 116-93, div. A, § 8041, 133 Stat. 2317, 2345 (2019); Pub. L. No. 116-260, div. C, § 8041, 134 Stat. 1182, 1313 (2020); Pub. L. No. 117-103, div. C, § 8046, 136 Stat. 49, 185 (2022); Pub. L. No. 117-328, div. C, § 8045, 136 Stat. 4459, 4596–97 (2022); 2024 Appropriations § 8044, 138 Stat. at 492–93.

once defined the term, doing so in a since-repealed statute that required the Secretary to deliver an annual "report on the intelligence oversight activities of the Department." John Warner National Defense Authorization Act for Fiscal Year 2007, Pub. L. No. 109-364, div. A, § 932(a), 120 Stat. 2083, 2362 (2006) (repealed 2011) ("section 932"). Field Operating Agencies were among the Department organizations from which Congress requested information, and they were defined as "[(i)] a specialized subdivision of the Department of [War] that [(ii)] carries out activities under the operational control of the Department." *Id.*, 120 Stat. at 2363.[12]

We conclude that section 932's definition of Field Operating Agencies provides reliable guidance for four reasons. *First*, the definition is consistent with section 8044's use of the term, which explicitly exempts three Field Operating Agencies from its prohibition. *See* 2024 Appropriations § 8044(c)(2)–(4), 138 Stat. at 493. The Army may establish a Field Operating Agency "to eliminate, mitigate, or counter the effects of improvised explosive devices, and . . . other similar threats." *Id.* § 8044(c)(2), 138 Stat. at 493. The Army may also establish a Field Operating Agency "to improve the effectiveness and efficiencies of biometric activities and to integrate common biometric technologies throughout the Department." *Id.* § 8044(c)(3), 138 Stat. at 493. And the Air Force may establish a Field Operating Agency to administer certain mortuary activities. *Id.* § 8044(c)(4), 138 Stat. at 493. Consistent with the now-repealed definition provided by section 932, such Field Operating Agencies are (i) specialized subdivisions of the Department that (ii) carry out activities under the operational control of the Department.[13]

*Second*, the definition furthers section 8044's goal of controlling personnel and expenses. *See id.* § 8044(b), 138 Stat. at 493. The Department has historically "respond[ed] to pressures to reduce its management

_____

[12] The second element of this definition notably excludes Combat Support Agencies, but it does not exclude Field Activities. Moreover, reading the definition to include Combat Support Agencies would improperly render section 932(a)'s explicit mention of Combat Support Agencies superfluous. *See* Scalia & Garner at 174.

[13] The 2024 NDAA similarly used the term to describe the National Space Intelligence Center, a (i) specialized subdivision of the Space Force that (ii) "analyze[s] and produce[s] scientific and technical intelligence on space-based and counterspace threats" under the operational control of the Space Force. 2024 NDAA § 1606(a), 137 Stat. at 586 (codified at 10 U.S.C. § 9081 note).

headquarters by transferring personnel to nonmanagement headquarters organizations."[14] Adopting Congress's prior definition of Field Operating Agency disincentivizes such actions by requiring notice to Congress before the creation of noncombat organizations that will require additional personnel and funding. Although a statute's purpose can never overcome the statutory text, "[a] textually permissible interpretation that furthers rather than obstructs the document's purpose should be favored," *see* Scalia & Garner at 63.

*Third*, the definition is consistent with how Congress has previously used the term. Congress first used Field Operating Agency in 1990 when it required the Secretary to establish guidelines for reducing civilians "employed by industrial-type activities or commercial-type activities," including Field Operating Agencies. National Defense Authorization Act for Fiscal Year 1991, Pub. L. No. 101-510, div. A, § 322(a)(1), 104 Stat. 1485, 1529 (1990) (codified as amended at 10 U.S.C. § 1597). That law identified Field Operating Agencies as a subspecies of "industrial-type" and "commercial-type" activities identified in section 2208, which "provide common services within or among departments and agencies of the Department." 10 U.S.C. § 2208(a)(2). The definition of Field Operating Agency that Congress later articulated in section 932 conforms with this description.

*Fourth*, the definition from section 932 is consistent with how the Executive Branch has traditionally defined the term. In 1998, the OSW defined Field Operating Agency to mean "[a]n organization under the supervision of a Headquarters Activity, but which is not a Major Command or a subordinate command of a Major Command, and whose primary mission is: (a) to support the headquarters to which it reports, (b) to execute policy, or (c) to carry out operational assignments." Cooke Memo, *supra* note 3, at 2. The Army and Air Force have maintained similar definitions. *See Dictionary of United States Army Terms*, Army Reg. 310-25 at 78 (1983); Air Force Hist. Rsch. Agency, *United States Air Force–DRU and FOA*, https://perma.cc/G3NL-CAAY.

One counterargument is that our view gives insufficient weight to the fact that Congress repealed the statute in which our definition was em-

---

[14] GAO, *Defense Headquarters*, *supra* note 1, at 2; *id.* at 17; *see also* 4 Headquarters, Dep't of the Army, *Redistribution of Basops/Unit Structure within TDA* at 27-3 (1988).

bedded. *See* Pub. L. No. 112-81, § 1061(4)(A), 125 Stat. 1298, 1583 (2011) ("2012 NDAA"). And, true enough, our Office has found such statutory history informative. *See, e.g.*, *Reconsidering the Application of the Hyde Amendment to the Provision of Transportation for Women Seeking Abortions*, 49 Op. O.L.C. __, at *9 (July 11, 2025) ("*Hyde Amendment*"). But such history is only valuable to the extent it "form[s] part of the context of the statute," Scalia & Garner at 256 (discussing the use of statutory history); *United States v. Hansen*, 143 S. Ct. 1932, 1943–44 (2023); *cf. Hubbard v. United States*, 514 U.S. 695, 708 (1995). In this instance, Congress repealed section 932(a) as part of a broader repeal of more than 45 Department reporting requirements. *See* 2012 NDAA §§ 1061–63, 125 Stat. at 1583–86. The context of the repeal thus demonstrates that Congress eliminated section 932(a) as part of a concerted effort to reduce potentially burdensome reporting requirements—not out of any disagreement with the definition that happened to be used in one of those requirements.

In sum, we conclude that a Field Operating Agency is (i) a specialized subdivision of the OSW or of an Armed Service that (ii) carries out non-combat activities under the OSW or the relevant Armed Service's headquarters.[15]

## B.

Having settled on a definition of Field Operating Agency, we now apply that definition to determine whether the Secretary's designation of the DIU and SCO as Field Activities "established" two new Field Operating Agencies for the purpose of the 2024 Appropriations rider. The status of these organizations as Field Operating Agencies does not depend on what the Department calls them. As a general matter, "appropriations bills are given a practical construction" meant "to preserve considerable flexibility for agencies." *Hyde Amendment* at *10–11. And, specific to this context, Congress is well aware that organizations of varying labels have been classified as Field Operating Agencies. *See* GAO, *Defense Headquarters*, *supra* note 1, at 2, 17. Whether an organization is a Field Operating Agency thus turns on the organization's structure and mission—that is,

---

[15] The term does not include a major command or its subordinate commands, nor does it include Combat Support Agencies.

whether it is a specialized subdivision of the OSW or of an Armed Service and whether it carries out noncombat activities under the OSW or the relevant Armed Service's headquarters. *See Hyde Amendment* at \*10–11.

The establishment of a Field Activity consequently does not necessarily establish a Field Operating Agency because the Secretary may designate an existing organization—including an existing Field Operating Agency—as a Field Activity. As noted in Part II.A, *supra*, "to establish" is "[t]o make or form; to bring about or into existence." *Black's Twelfth* at 686. A Field Operating Agency, like a Field Activity, is thus "established" when an action brings into existence a Field Operating Agency that did not exist before the action. *See* Part II.B, *supra*.

Now consider the following scenarios. *First*, the Secretary erects a new organization to serve as a Field Activity. The total number of Field Activities existing after the action has increased by one, as has the total number of Field Operating Agencies. He has thus established both a Field Activity and a Field Operating Agency.

*Second*, the Secretary designates an *existing* organization that is *not* originally a Field Operating Agency as a Field Activity. Again, the total number of Field Activities existing after the action has increased by one, as has the total number of Field Operating Agencies—after all, every Field Activity is a specialized subdivision of the OSW that carries out noncombat activities under the OSW. He has therefore established both a Field Activity and a Field Operating Agency.

*Third*, the Secretary designates an *existing* Field Operating Agency as a Field Activity. The total number of Field Activities existing after the action has increased by one. He has thus established a Field Activity. But the total number of *Field Operating Agencies* existing after the action has *not* changed. Consequently, the Secretary has *not* "brought about or into existence" a new Field Operating Agency, despite having established a Field Activity.[16]

The designation of the DIU and SCO as Field Activities is an example of this third situation. The DIU and SCO were not Field Activities at the

---

[16] It is theoretically possible that the designation of a Field Operating Agency as a Field Activity could fundamentally alter the Field Operating Agency's mission or structure. We leave the issue of section 8044's applicability to such a scenario for a later day, as your question presents no such facts.

time of your inquiry, but they had long been Field Operating Agencies. The Secretary, after all, in compliance with all applicable law, created the DIU in 2015 as an organization within the OSW whose mission is to identify, support the development of, and coordinate the procurement and integration of commercial technologies that may serve military purposes. DIU Directive § 1.3; *OSW Organizational Structure*; *see also* 10 U.S.C. § 4127(a), (d). The Secretary likewise correctly erected the SCO in 2015 as an OSW organization and charged it with identifying, analyzing, and introducing "disruptive applications and new and unconventional uses of existing systems and near-term technologies . . . to create operational strategic effects." SCO Directive § 2(a); *OSW Organizational Structure*. Thus, both the DIU and SCO have, since their creation, been (i) specialized subdivisions of the OSW that (ii) carry out noncombat activities under the OSW. That is, they have existed and continue to exist as properly established Field Operating Agencies regardless of their designation as Field Activities. January Memo at 2.

Before the Secretary designated the DIU and SCO as Field Activities, eight Field Activities existed, *see* GAO, *Defense Management* at 4–5; *see also id.* at 6 (Figure 1), and the universe of Field Operating Agencies included the DIU and SCO. After the designation, *ten* Field Activities existed, but the universe of Field Operating Agencies remained unchanged: It included the DIU and SCO before the designation, and it continued to include the DIU and SCO after the designation. The Secretary's action therefore did *not* "bring about or into existence" a new Field Operating Agency, despite establishing two Field Activities. And, because the action did not establish a new Field Operating Agency, it did not trigger section 8044. That statute's procedural requirements were therefore inapplicable.

This conclusion conforms with the purpose of section 8044 and with our "flexible approach in addressing the legal propriety of agency expenditures of their general appropriations." *Use of General Agency Appropriations to Purchase Employee Business Cards*, 21 Op. O.L.C. 150, 153 (1997) ("*General Agency Appropriations*"). The section 8044 appropriations rider is meant to prohibit the Department from spending appropriated funds on the creation of *new* noncombat headquarter organizations. *See* 2024 Appropriations § 8044(a), 138 Stat. at 492–93; *see also* Part III.A, *supra* (defining "Field Operating Agency"). It is *not* meant to stifle the

Secretary's ability to restructure *existing* OSW organizations. *See General Agency Appropriations*, 21 Op. O.L.C. at 153 (citing *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993)). *See also* 10 U.S.C. § 191. This is particularly true here, where the designation of the DIU and SCO as Field Activities did not alter either organization's internal structure or missions. *See* DIU Directive; SCO Directive; *see also* Whited E-mail. Nor did the designation increase their personnel or budgets. *See* 10 U.S.C. § 194(a)–(b); Whited E-mail. The Field Activity designation merely provided the DIU and SCO Directors greater control over their budgets and internal operations and promoted the efficient and effective development and procurement of advanced technologies. *See* Whited E-mail; April General Counsel E-mail.

## IV.

In conclusion, section 191 provides the Secretary broad discretion to designate the DIU and SCO as Field Activities because they meet the statutory requirements for such a designation. Moreover, because they already existed as Field Operating Agencies, their designation as Field Activities did not establish any Field Operating Agencies for the purpose of section 8044. As a result, the Secretary could take the actions detailed in the January Memo without triggering the procedural requirements of section 8044.

LANORA C. PETTIT
*Deputy Assistant Attorney General*
*Office of Legal Counsel*
